UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEVEN THARP, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>ACACIA COMMUNICATIONS, INC., et al.<br><br>        Defendants. | No. 1:17-cv-11504-WGY<br><br>CLASS ACTION |
| HUI ZHANG, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>ACACIA COMMUNICATIONS, INC., et al.<br><br>        Defendants. | No. 1:17-cv-11518-WGY<br><br>CLASS ACTION |
| CHRIS KEBLER, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>ACACIA COMMUNICATIONS, INC., et al.<br><br>        Defendants. | No. 1:17-cv-11695-WGY<br><br>CLASS ACTION |

PLAINTIFF CHRIS KEBLER'S OPPOSITION TO LEAD PLAINTIFF MOTIONS

# TABLE OF CONTENTS

**Page**

I.#  INTRODUCTION ...................................................................................................1#

II.#  ARGUMENT .......................................................................................................3#

    A.#  The WKW-Zhang Group Is Not Entitled to the Most Adequate Plaintiff Presumption ...........................................................................................................4#

    B.#  Mr. Kebler Is the Presumptive Lead Plaintiff ........................................................11#

    C.#  Mr. Sobala's Contention that "Zealousness" Is Outcome Determinative Lacks Statutory Support...............................................................................................12#

    D.#  Rina Rollhaus' Motion Should Be Denied Because There Is No Need for a Subclass or "Niche Co-Lead Plaintiff" ..................................................................14#

    E.#  The Other Movants Are Not Eligible for the PSLRA's Presumption ...................17#

III.#  CONCLUSION.....................................................................................................17#

# TABLE OF AUTHORITIES

**Page**

## CASES

*Applestein v. Medivation, Inc.*,
2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 17, 2010) ................................................12, 13

*Arciaga v. Barrett Bus. Servs.*,
2015 WL 791768 (W.D. Wash. Feb. 25, 2015) ....................................................................7, 8

*Ark. Teacher Ret. Sys. v. Insulet Corp.*,
177 F. Supp. 3d 618 (D. Mass. 2016) ....................................................................................13

*Bodri v. Gopro, Inc.*,
2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ........................................................................15

*Brown v. Biogen IDEC, Inc.*,
2005 U.S. Dist. LEXIS 19350 (D. Mass. July 26, 2005) ...........................................................5

*Brown v. China Integrated Energy, Inc.*,
2011 U.S. Dist. LEXIS 151131 (C.D. Cal. Aug. 29, 2011) ......................................................10

*City of Monroe Emps.' Ret. Sys.Ret. Sys. v. Hartford Fin. Servs.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ............................................................................................11

*Coopersmith v. Lehman Bros.*,
344 F. Supp. 2d 783 (D. Mass. 2004) ....................................................................................11

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................................4

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008).......................................7, 9, 10, 13

*Elstein v. Net 1 UEPS Techs., Inc.*,
2014 U.S. Dist. LEXIS 100574 (S.D.N.Y. July 23, 2014) .......................................................7

*Eshe Fund v. Fifth Third Bancorp*,
2009 WL 10665360 (S.D. Ohio Mar. 5, 2009) ......................................................................16

*Frias v. Dendreon Corp.*,
835 F. Supp. 2d 1067 (W.D. Wash. 2011) ..............................................................................9

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) ..........................................................................................16

1322938_1

**Page**

*Grodko v. Cent. European Distribution Corp.,*
 2012 WL 6595931 (D.N.J. Dec. 17, 2012)........................................................................3, 11

*Hevesi v. Citigroup Inc.,*
 366 F.3d 70 (2d Cir. 2004).................................................................................................15

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,*
 354 F. Supp. 2d 18 (D. Mass. 2000) ................................................................................6, 7

*In re Able Labs. Sec. Litig.,*
 425 F. Supp. 2d 562 (D.N.J. 2006) .......................................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,*
 258 F.R.D. 260 (S.D.N.Y. 2009) .........................................................................................15

*In re Cable & Wireless, PLC, Sec. Litig.,*
 217 F.R.D. 372 (E.D. Va. 2003) ..........................................................................................11

*In re Carreker Corp. Sec. Litig.,*
 2003 U.S. Dist. LEXIS 25988 (N.D. Tex. Aug. 14, 2003)....................................................8

*In re Cavanaugh,*
 306 F.3d 726 (9th Cir. 2002) .........................................................................................13, 17

*In re Cendant Corp. Litig.,*
 182 F.R.D. 144 (D.N.J. 1998)........................................................................................16, 17

*In re Cendant Corp. Litig.,*
 264 F.3d 201 (3d Cir. 2001)........................................................................................3, 4, 7, 9

*In re Century Bus. Servs., Sec. Litig.,*
 202 F.R.D. 532 (N.D. Ohio 2001) .......................................................................................14

*In re CMED Sec. Litig.,*
 2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012).......................................................9

*In re Cohen,*
 586 F.3d 703 (9th Cir. 2009) ...............................................................................................14

*In re Enron Corp., Sec. Litig.,*
 206 F.R.D. 427 (S.D. Tex. 2002).........................................................................................16

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.,*
 209 F.R.D. 447 (C.D. Cal. 2002).........................................................................................9

- iii -

**Page**

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ....................................................................7, 8

*In re Initial Pub. Offering*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ..........................................................................11

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................7

*In re Level 3 Commcn's, Inc. Sec. Litig.*,
  2009 U.S. Dist. LEXIS 44706 (D. Colo. May 4, 2009).........................................7

*In re McKesson HBOC, Inc. Sec. Litig.*,
  97 F. Supp. 2d 993 (N.D. Cal. 1999) ....................................................................10

*In re Network Assocs.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................6

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015).................................................................7, 9

*In re Silicon Storage Tech., Inc.*,
  2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ......................................10

*In re Spectrum Pharm., Inc.*,
  2014 U.S. Dist. LEXIS 38322 (D. Nev. Mar. 20, 2014).....................................7, 9

*In re Vonage Initial Pub. Offering Sec. Litig.*,
  2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................................5, 6

*In re XM Satellite Radio Holdings Sec. Litig*,
  237 F.R.D. 13 (D.D.C. 2006)................................................................................17

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
  2015 U.S. Dist. LEXIS 153202 (S.D.N.Y. Nov. 12, 2015)..............................7, 8, 9

*Irving Firemen's Relief and Ret. Fund v. Tesco PLC*,
  2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ......................................................15

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)...............................................................9, 16

*Kubala v. Skypeople Fruit Juice, Inc.*,
  2011 U.S. Dist. LEXIS 99049 (S.D.N.Y. Aug. 30, 2011)......................................8

- iv -

**Page**

*Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*,
  2016 WL 3032684 (D.N.J. May 26, 2016) ...................................................................8

*Makhlouf v. Tailored Brands, Inc.*,
  2017 WL 1092311 (S.D. Tex. Mar. 23, 2017).............................................................9

*Maliarov v. Eros Int'l PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016).............................................................9, 14

*Markette v. Xoma Corp.*,
  2016 U.S. Dist. LEXIS 63701 (N.D. Cal. May 13, 2016) ......................................7, 8

*Metzler Asset Mgmt. GmbH v. Kingsley*,
  2017 WL 438731 (D. Mass. Feb. 1, 2017) ...............................................11, 12, 13

*Nager v. Websecure, Inc.*,
  1997 WL 773717 (D. Mass. Nov. 26, 1997) ............................................................5

*Nicolow v. Hewlett Packard Co.*,
  2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013).........................................7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ..........................................................................7, 9

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...........................................................................15

*Roth v. Knight Trading Grp. Inc.*,
  228 F. Supp. 2d 524 (D.N.J. 2002) ..........................................................................8

*Schueneman v. Arena Pharm., Inc.*,
  2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) .......................................17

*Shiring v.Tier Techs., Inc.*,
  244 F.R.D. 307 (E.D. Va. 2007) ..........................................................................5, 6

*State Universities Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
  2006 WL 3827441 (D. Mass. Dec. 27, 2006)......................................................4, 13

*Tsirekidze v. Syntax-Brillian Corp.*,
  2008 WL 942273 (D. Ariz. Apr. 7, 2008) ...................................................7, 13, 16

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008).......................................................................8

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B) .................................................................................................. 11
  §78u-4(a)(3)(B)(iii) ........................................................................................... 13
  §78u-4(a)(3)(B)(iii)(I) ..................................................................................... 1, 3
  §78u-4(a)(3)(B)(iii)(II) ..................................................................................... 12
  §78u-4(a)(3)(B)(iv) ............................................................................................. 5

Federal Rules of Civil Procedure
  Rule 23 ..................................................................................................... *passim*

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N.
  679 ........................................................................................................................ 4

## I.      INTRODUCTION

Several motions have been filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").   Plaintiff Chris Kebler respectfully submits that, of the eligible applicants, he is the only one who meets all statutory requirements that govern the Court's choice of the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

By contrast, the group of previously unaffiliated strangers that claims to have suffered the facially largest loss, WKW Partners Fund I, LP and Hui Zhang (the "WKW-Zhang Group"), was not only cobbled together by counsel, but WKW Partners engaged in "in-and-out" trading throughout the Class Period, giving rise to a unique loss causation defense that defendants will assuredly raise at every juncture.  In addition, the ability of members of that group to serve as lead plaintiff – and to supervise Lead Counsel – is undermined by the fact that each appears to have signed a Certification (under penalty of perjury) without even reviewing or understanding what was signed.  While both Certifications represent that the movant reviewed a copy of the complaint, that representation is doubtful as the link to view the complaint on counsel's website is to a page with the following notice:

We are currently preparing a complaint.
Please contact us to discuss this matter:

shareholders@glancylaw.com
phone: (310) 201-9150
toll-free: (888) 773-9224

*See* Ex. 1.  Since the memorandum in support of their motion states these "[m]ovants have retained Glancy Prongay & Murray LLP as Lead Counsel," (Dkt. No. 27-1 at 9), there is no way that either could have reviewed a copy of the complaint on Glancy Prongay's website  – as both stated they did – before electronically signing their Certifications.   It is also unclear whether either movant

- 1 -

understood they did not need to "join" the class action to potentially receive a future recovery, given this prominent statement on Glancy Prongay's website:

> Acacia Communications, Inc. shareholders have an opportunity to recover their investment losses. Click here to join this action.

Even more confusing, the retention agreement on the Glancy Prongay website references an "Authorization to file Acacia Communications, Inc. *Claim form*," which again misleadingly suggests that an investor must sign up with the firm to participate in any recovery. Ex. 1 at 6 (emphasis added). These facts strongly support the inference that the WKW-Zhang Group does not appreciate the responsibilities of serving as a lead plaintiff and may not have even intended to seek appointment at the time their Certifications were executed. These issues preclude a finding of adequacy and render them ineligible for appointment as lead plaintiff in this case.

The other movants all claimed smaller losses than Mr. Kebler when their motions were filed, and therefore erroneously represented to the Court that they suffered the largest financial interest. *See* Dkt. Nos. 22, 25, 32. The lone remaining movant, Rina Rollhaus, not only suffered a far smaller loss than Mr. Kebler, but she also seeks appointment as lead plaintiff for a subclass of purchasers asserting Securities Act of 1933 ("1933 Act") claims – claims that did not exist until she filed a complaint just 15 minutes before the expiration of the lead plaintiff motion deadline and of which other putative class members had no notice. Regardless of her last minute maneuver, district courts regularly deny requests by "niche" movants, with *de minimus* losses, to splinter the class.

In short, Mr. Kebler is the only candidate that satisfies all of the PSLRA's requirements for appointment as lead plaintiff. He requests that he be appointed Lead Plaintiff and that his selection of counsel be approved. *See Kebler v. Acacia Commc'ns, Inc.*, No. 17-cv-011695, Dkt. No. 1, Prayer for Relief, A.

1322938_1

## II.    ARGUMENT

In determining which putative class member is "the most adequate plaintiff," the PSLRA

provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that --
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

"For purposes of identifying the presumptive lead plaintiff, the Court must determine

whether the movant with the largest financial interest has made a '*prima facie* showing of typicality

and adequacy.'" *Grodko v. Cent. European Distribution Corp.*, 2012 WL 6595931, at *3 (D.N.J.

Dec. 17, 2012); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).[1] "If the movant with

the largest financial interest makes that prima facie showing, it will be the presumptive lead

plaintiff." *Id*. "'A proposed class representative is neither typical nor adequate if the representative

is subject to a unique defense that is likely to become a major focus of the litigation.'" *Id*.

Importantly, "[t]here is no requirement at this early stage to 'prove a defense, only to show a degree

of likelihood that a unique defense might play a significant role at trial.'" *Id*. "The point 'is not to

adjudicate the case before it has even begun, but rather to protect the absent class members from the

expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.'" *Id*.

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.

- 3 -

If the applicant claiming the largest loss does not satisfy the Rule 23 requirements, "the Court must identify another lead plaintiff by, once again, beginning with the remaining applicant with the greatest financial losses." *Id.*

### A.    The WKW-Zhang Group Is Not Entitled to the Most Adequate Plaintiff Presumption

While the WKW-Zhang Group claims to have suffered the largest loss of all the lead plaintiff applicants – which amount is overstated – the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264.[2]  In this regard, it is significant that one of the PSLRA's key aims was "'to empower investors so that they-not their lawyers-exercise primary control over private securities litigation.'" *State Universities Ret. Sys. of Ill. v. Sonus Networks, Inc*., 2006 WL 3827441, at *1 (D. Mass. Dec. 27, 2006) (quoting S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683).  For a host of reasons, it is readily apparent that the WKW-Zhang Group has not made the *prima facie* showing of typicality or adequacy necessary to trigger the most adequate plaintiff presumption.

First, and most disconcerting, both WKW Partners and Zhang executed Certifications under penalty of perjury stating they "reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf."  *See* Dkt. No. 27-4 at ¶1.  Yet, the supposed link to a complaint

---

[2]    The WKW-Zhang Group's loss is overstated because WKW Partners was in-and-out of its Acacia investment several times during the Class Period ***before*** an alleged disclosure of defendants' wrongdoing impacted the stock price.  *See* Ex. 2.  By including its entire market loss without regard to the wrongdoing, WKW Partners has plainly overstated its financial interest.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").  Ronald Sobala's loss suffers from the same defect.  *See* Ex. 3.

on their counsel's website does not refer a user to a complaint, but instead to only the following notice:

We are currently preparing a complaint.
Please contact us to discuss this matter:

shareholders@glancylaw.com
phone: (310) 201-9150
toll-free: (888) 773-9224

*See* Ex. 1.  If no complaint was available on the Glancy Prongay website for either WKW Partners or Zhang to view before signing their Certifications, their Certifications are false, which precludes a showing of adequacy.  *See Shiring v.Tier Techs., Inc.*, 244 F.R.D. 307, 317 (E.D. Va. 2007) (denying class certification where "Plaintiff's inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that . . . counsel against a finding of adequacy"); *In re Vonage Initial Pub. Offering Sec. Litig.*, 2007 WL 2683636, at *7-*9 (D.N.J. Sept. 7, 2007) (finding movant failed to make adequacy showing where he "misleadingly declared that he 'reviewed the Complaint' and 'authorizes its filing' when, in fact, he testified during this deposition that he thought he was authorizing 'a future complaint' and that he 'cannot recall' any complaint he purportedly reviewed"); *Nager v. Websecure, Inc.*, 1997 WL 773717, at *1 n.1 (D. Mass. Nov. 26, 1997) (finding that "inaccuracy [in movant's affidavit] may be explainable, but it casts sufficient doubt on [movant's] adequacy as a representative plaintiff that he should be excluded" from serving as lead plaintiff).[3]

---

[3]  The PSLRA permits "discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff."  15 U.S.C. §78u-4(a)(3)(B)(iv).  Based on the issues surrounding the WKW-Zhang Group's Certifications, discovery is warranted in this case.  *See Brown v. Biogen IDEC, Inc.*, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005) ("this court will allow London a limited period to conduct discovery into the issue of the adequacy").

Second, the Glancy Prongay website may have misled WKW Partners and Zhang, non-lawyers, that they "might be left out of the class entirely if [they] did not retain the [Glancy Prongay] Firm" and "join" the case. *Vongage*, 2007 WL 2683636, at *9. Specifically, the case page for Acacia Communications contains this bold statement:

> Acacia Communications, Inc. shareholders have an opportunity to recover their investment losses. Click here to join this action.

Compounding the potential for confusion, the Glancy Prongay retainer for the Acacia Communications case references an "Authorization to file Acacia Communications, Inc. ***Claim form***." Ex. 1 at 6 (emphasis added). In light of the unavailability of the complaint and the other website representations, the Court should not be convinced that WKW Partners or Zhang were "fully aware of the situation prior to selecting counsel or that [either] is sophisticated enough to lead the litigation." *Vonage*, 2007 WL 2683636, at *9; *Shiring*, 244 F.R.D. at 317 (denying class certification where the PSLRA certification reported incorrect prices and transaction dates, because "Plaintiff's inadvertence or his indifference to the PSLRA's certification requirements demonstrates a lack of diligence and candor that . . . counsel against a finding of adequacy"); *In re Network Assocs.*, 76 F. Supp. 2d 1017, 1022 (N.D. Cal. 1999) ("This form-submitting process bears a resemblance to the claim-submitting process that traditionally has occurred at the end of class litigation. . . . No doubt, many send in the forms thinking they need to in order to participate in any recovery.").

Third, the WKW-Zhang Group are two apparent strangers "whose commonality rests only in their status of stock purchasers" and common lawyers. *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 23 (D. Mass. 2000) (noting that such groups are inadequate because "the 'whole point of the [PSLRA] was to install a lead plaintiff with substantive decision

making ability and authority,' instead of permitting attorneys to direct the litigation process").

Importantly, "a Court should not blindly aggregate the losses of unrelated plaintiffs to confer lead

plaintiff status on a group without considering whether the grouping is sufficiently coherent to

control the litigation." *In re Lernout & Hauspie Sec. Litig*., 138 F. Supp. 2d 39, 44 (D. Mass. 2001).

Specifically, "the Court should . . . evaluate the structure of the group to ensure that the lead

plaintiffs, not the attorneys, are in the driver's seat." *Id.* at 45 (finding group that submitted evidence

it had "met personally to discuss the litigation and potential strategies" satisfied the Rule 23

requirements).[4] "If the court determines that the way in which a group seeking to become lead

plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the

tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will

not fairly and adequately represent the interests of the class." *Cendant*, 264 F.3d at 266.

Here, while WKW Partners and Zhang "were able to collaborate on [filing their motion],

nothing suggests that they are a cohesive enough unit to adequately represent other plaintiffs."

*Howard Gunty Profit Sharing Plan*, 354 F. Supp. 2d at 24.  Indeed, not only does their declaration

---

[4]    Courts around the country are also in accord.  *See, e.g.*, *Markette v. Xoma Corp.*, 2016 U.S. Dist. LEXIS 63701, at *29 (N.D. Cal. May 13, 2016) (declining to appoint group that was "'created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel'"); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) (same); *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 U.S. Dist. LEXIS 153202, at *8-*9 (S.D.N.Y. Nov. 12, 2015) (same); *Arciaga v. Barrett Bus. Servs.*, 2015 WL 791768, at *3 (W.D. Wash. Feb. 25, 2015) (same); *Elstein v. Net 1 UEPS Techs., Inc.*, 2014 U.S. Dist. LEXIS 100574, at *9 (S.D.N.Y. July 23, 2014) (same); *In re Spectrum Pharm., Inc*., 2014 U.S. Dist. LEXIS 38322, at *10 (D. Nev. Mar. 20, 2014) (same); *Nicolow v. Hewlett Packard Co.*, 2013 U.S. Dist. LEXIS 29876, at *23 (N.D. Cal. Mar. 4, 2013) (same); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012) (same); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (same); *In re Level 3 Commcn's, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *11 (D. Colo. May 4, 2009) (same); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 U.S. Dist. LEXIS 64633, at *28 (N.D. Cal. Aug. 22, 2008) (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) ("[W]hen unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.").

lack any evidence of a pre-existing relationship, they admit (*see* Dkt. No. 27-6 at ¶¶4-5) that the

"decision . . . to join together . . . in this matter serves only the purpose of acting as lead plaintiff in

this litigation." *Lifestyle Investments, LLC v. Amicus Therapeutics, Inc.*, 2016 WL 3032684, at *6

(D.N.J. May 26, 2016). Such a "loosely connected" group that admittedly was "formed only for the

purposes of this litigation" cannot – and does not – satisfy the Rule 23 requirements. *Arciaga*, 2015

WL 791768, at *3. Not only are there no reasons offered for the combination of WKW Partners and

Zhang, the union is undermined by "the fact that [Zhang] previously brought one of the consolidated

actions in [Zhang's] own name, adequately and without any assistance from [WKW Partners]."

*Gentiva*, 281 F.R.D. at 119 (denying group's motion and noting that "reasons offered [by group] for

the combination are not particularly compelling"); *Roth v. Knight Trading Grp. Inc.*, 228 F. Supp. 2d

524, 531 (D.N.J. 2002) (declining to appoint group because "[t]he reasons advanced by [the group]

to proceed together as Lead Plaintiff are not compelling" and they "have not demonstrated the

necessity nor efficacy to the Class' benefit for such designation as joint Lead Plaintiff").[5]

---

[5]   *See also Markette*, 2016 U.S. Dist. LEXIS 63701, at *22 (finding group's statements, like "their collective commitment to take an 'active role' in the case and to 'communicate regularly with counsel and each other regarding major litigation events,'" to be inadequate generalities); *Int'l Union*, 2015 U.S. Dist. LEXIS 153202, at *10-*11 (finding statement that group would "'confer via phone and/or email as necessary'" to be "conclusory assurances" that "are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation"); *Kubala v. Skypeople Fruit Juice, Inc.*, 2011 U.S. Dist. LEXIS 99049, at *4 (S.D.N.Y. Aug. 30, 2011) ("flimsy assertions fall short of establishing a bona fide connection between the individuals which would enable the members of the group to stand in a position superior to an individual investor with losses larger than any single group member but smaller than the entire purported group"); *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392-94 (S.D.N.Y. 2008) (rejecting proposed lead plaintiff group that failed to describe "how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members . . . [or] whether its members have ever communicated"); *In re Carreker Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 25988, at *10 (N.D. Tex. Aug. 14, 2003) (finding "non-specific statements" that group has "'implemented procedures,' have a 'regular schedule' and will make decisions . . . on majority vote" insufficient); *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074-75 (W.D. Wash. 2011) (finding that declaration's "myriad conclusory statements and generalizations," such as group "'intend[s] to

- 8 -

In short, a group like the WKW-Zhang Group that was plainly "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel" is precisely what the Third Circuit held should result in a movant being "disqualif[ied] . . . from serving as lead plaintiff." *Cendant*, 264 F.3d at 266-67; *Petrobras*, 104 F. Supp. 3d at 622 (finding group to be "wholly artificial" because counsel "served as the catalyst for the group's formation").[6]

---

work closely together'" and will "'communicat[e], individually or as a group, with each other and with counsel,'" "have little or no substance and do not further the position of this otherwise unrelated group"); *Pipefitters Local No. 636 Defined Benefit Plan*, 275 F.R.D. at 191-92 (finding that "although [group] submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation"); *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *28 (finding that group's "conclusory declaration has little or no substance"); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (declining to consider a group that "provide[d] little detail concerning the procedures they have implemented to 'provide for efficient prosecution of the action'").

[6]   *See also Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *6 (S.D. Tex. Mar. 23, 2017) (finding group inadequate because "[a]side from their losing investment in TLRD and the same counsel, there is no relationship between the two Funds"); *Int'l Union*, 2015 U.S. Dist. LEXIS 153202, at *12 (finding group was "lawyer-driven" because joint declaration "acknowledge[d] that only after 'conferring with one another and with counsel' did the two funds decide to jointly file a motion"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533-34 (S.D.N.Y. 2015) (finding "no evidence that the members chose counsel, rather than vice versa" because joint declaration acknowledged group was "'introduced to each other through our counsel'") (emphasis omitted); *In re CMED Sec. Litig.*, 2012 U.S. Dist. LEXIS 47785, at *17 (S.D.N.Y. Apr. 2, 2012) (finding group was "lawyer-driven" because members acknowledged that "'[i]n consultation with our counsel, we agreed to proceed together'" and "exchanged contact information to be able to communicate outside the presence of counsel" during their group formation call) (emphasis omitted); *Spectrum*, 2014 U.S. Dist. LEXIS 38322, at *10 (declining to "aggregate the financial interests of the members of the SPPI Group" because group could not "establish that the formation of their group was driven by some mechanism other than the same law firm that the group intends to nominate as lead counsel"); *but see Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *5 (S.D.N.Y. Apr. 5, 2016) (finding losses were properly combined because, among other reasons, the individuals "decided to file a joint application for appointment as lead plaintiff before approaching counsel"); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 569, 571 (D.N.J. 2006) (court was "satisfied that the clients, and not counsel, were the motivating force behind the formation of an alliance" because declaration indicated "it was the institutional investors themselves who decided to work together").

And finally, WKW Partners' Certification reveals that it regularly traded all of its holdings of Acacia stock completely in-and-out before an alleged disclosure. *See* Ex. 2.[7] This type of trading is problematic for two interrelated reasons.  First, "[b]ecause such a trader sells its shares prior to a disclosure that lowers the stock price, it is unlikely to have suffered loss as a result [of] the false and misleading statements or omissions, and would not be an appropriate lead plaintiff." *Brown v. China Integrated Energy, Inc.*, 2011 U.S. Dist. LEXIS 151131, at *37-*38 (C.D. Cal. Aug. 29, 2011).  And second, because it cannot establish loss causation for these transactions, WKW Partners' loss is dramatically overstated.  *See Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *12 ("find[ing] no reason to include losses in its calculations that would later be considered uncompensable" because "it is difficult, if not impossible, to demonstrate loss causation for shares bought ***and*** sold before the disclosure of the misstatements or omissions") (emphasis in original); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999) (holding it was "inappropriate to count losses (or profits) by 'in-and-out' traders . . . when determining the plaintiff with the greatest financial interest in the litigation").  For both reasons, the motion should be denied.  *See In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *26 (N.D. Cal. May 3, 2005) (rejecting proposed lead plaintiff "because both members of this group are in/out traders, and as such, are potentially subject to unique defenses").[8]

In sum, the WKW-Zhang Group has not made a *prima facie* showing of adequacy and is therefore ineligible for the PSLRA presumption.  Moreover, even if it had made the necessary showing,  appointing the WKW-Zhang Group as lead plaintiff could jeopardize the class's ability to

---

[7]  Ronald Sobala suffers from a similar defect.  *See* Ex. 3.

[8]  Ronald Sobala also inflated his loss estimate on in-and-out transactions.  *See* Ex. 3.

be certified and could potentially threaten the focus of this litigation.  As such, the WKW-Zhang

Group's motion should be denied.

## B.    Mr. Kebler Is the Presumptive Lead Plaintiff

As this Court has previously recognized, "two sets of parties are initially eligible for

appointment as lead plaintiff: 1) those who have moved for appointment within 60 days and 2) those

who have filed a complaint."  *Coopersmith v. Lehman Bros.*, 344 F. Supp. 2d 783, 786 (D. Mass.

2004).[9]  Mr. Kebler filed a complaint and has the greatest financial interest of the remaining

applicants:

| Movant: | Claimed Loss: | Net Shares Purchased: |
|---|---|---|
| **Chris Kebler** | **$133,000** | **2,000** |
| Ronald Sobala | $104,792 | 210 |
| Subhash Saha | $61,600 | 1,000 |
| David Kloopfenstein | $20,134 | 800 |
| Rina Rollhaus | $4,600 | 150 |

*See Kebler* Dkt. No. 1-1; *Tharp* Dkt. Nos. 23-2, 26-3, 33-3, 30-2.

Mr. Kebler also satisfies the Rule 23 requirements.  Indeed, Mr. Kebler's claims are entirely

"typical of the putative class's claims, in that they arise from the same course of events and involve

the same legal theory as to the claims of the rest of the class."  *Metzler Asset Mgmt. GmbH v.*

---

[9]    *See also Grodko*, 2012 WL 6595931, at *8 (appointing plaintiff that filed complaint as lead
plaintiff because it is "clear that filing a complaint entitles a lead plaintiff candidate to consideration
under the clear wording of subparagraph 78u-4 (a)(3)(B)(iii)(I)(aa)"); *City of Monroe Emps.' Ret.
Sys. v. Hartford Fin. Servs.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010) ("All of the class members
seeking appointment as lead plaintiff meet the first [PSLRA] requirement in that they have filed
complaints or submitted motions for lead plaintiff status . . . ."); *In re Cable & Wireless, PLC, Sec.
Litig.*, 217 F.R.D. 372, 374 (E.D. Va. 2003) ("class members who have filed a complaint or made a
motion pursuant to § 21D(a)(3)(B) of the Exchange Act are eligible to be appointed lead plaintiff");
*In re Initial Pub. Offering*, 214 F.R.D. 117, 120 n.4 (S.D.N.Y. 2002) ("the filing of any of the
initially consolidated actions will suffice for purposes of the lead plaintiff section").

*Kingsley*, 2017 WL 438731, at *3 (D. Mass. Feb. 1, 2017). Mr. Kebler is also "capable of adequately protecting the interests of the class, in that [he] possesses 'common interests and an absence of conflict with the class members and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.'" *Id.*; *see also* Ex. 4. Mr. Kebler also selected qualified counsel to represent him and the putative class in this case. *See* Exs. 5-6.

As such, Mr. Kebler is the presumed lead plaintiff. Pursuant to the PSLRA, this "presumption may only be rebutted upon proof by a member of the purported class that [he] either will not fairly and adequately represent the class or is subject to unique defenses." *Metzler Asset Mgmt. GmbH*, 2017 WL 438731, at *4 (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)). No such proof will be presented here. Consequently, Mr. Kebler's request for appointment should be granted.

## C.     Mr. Sobala's Contention that "Zealousness" Is Outcome Determinative Lacks Statutory Support

Recognizing he lacked the largest financial interest when his motion was filed, Mr. Sobala contends that because no institutions have sought appointment as lead plaintiff and the individuals all suffered "similar losses," the statutory financial interest test should be cast aside in favor of "zeal" and "commitment to monitoring the litigation." Dkt. No. 22 at 11.[10] While Mr. Sobala

---

[10]   Mr. Sobala's characterization, that his loss is similar to Mr. Kebler's loss, is misplaced because he improperly included in-and-out transactions before a disclosure of defendants' alleged wrongdoing and he vastly overestimated his actual financial interest. *See* Ex. 3. As with WKW Partners, this trading pattern subjects Mr. Sobala to a loss causation defense. In addition, Mr. Sobala's investment thesis mirrors that of someone who "'typically focus[es] on technical price movements rather than price,' and therefore are subject to a defense [that] they would have purchased the stock at issue 'regardless of the misstatement/omission.'" *Applestein v. Medivation, Inc.*, 2010 U.S. Dist. LEXIS 98255, at *9-*10 (N.D. Cal. Sept. 17, 2010) (rejecting day trader as lead plaintiff). Indeed, Mr. Sobala's Certification evidences numerous trades designed to take advantage of incremental price movements of as little as a few cents. *See* Dkt. No. 23-2. As compared to other putative class members (like Mr. Kebler), a trader like Mr. Sobala "would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, ***not*** upon daily market volatility." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *36. And while the "record before the court may be insufficient to establish that [Mr. Sobala] was a day-trader *qua* day-trader,"

- 12 -

certainly earns creativity points, his proposal to jettison the statutory criteria in favor of amorphous characteristics obviously lacks legal support. *See Metzler Asset Mgmt. GmbH*, 2017 WL 438731, at *3 (recognizing that alternative criteria suggested by movant that "did not have the largest total interest in the relief sought" was "not the standard set forth in 15 U.S.C. §78u-4(a)(3)(B)(iii)"); *State Universities Ret. Sys. of Ill.*, 2006 WL 3827441, at *3 (rejecting movant's argument that it was a better applicant because "its claims, and those of all other putative class members including MPERS, would have been lost except for the alert and energetic efforts of SURSI and its counsel to file this action" because such activity was not a statutory qualification for lead plaintiff).[11]   Stated simply, "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals."  *In re Cavanaugh*, 306 F.3d 726, 731-32 (9th Cir. 2002).

Likely because Mr. Sobala knew his "zealousness" standard would not pass muster, he alternatively asks to be appointed as co-lead plaintiff, with his counsel serving as co-lead counsel, "with the other movants with similarly-sized losses and their counsel." Dkt. No. 22 at 13.  Yet, this too lacks legal support.  *See Ark. Teacher Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625–26 (D. Mass. 2016) (finding that the "appointment of Smith and the IIG as co-lead plaintiffs would undermine the purposes of the PSLRA"); *In re Cohen*, 586 F.3d 703, 711 n.4 (9th Cir. 2009) (noting

---

it "is sufficient, however, to raise serious concerns about his typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions made by [defendants]."  *Applestein*, 2010 U.S. Dist. LEXIS 98255, at *10; *Tsirekidze*, 2008 WL 942273, at *4 ("While a day trader is not ipso facto disqualified from the lead plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class.").

[11]   Mr. Sobala neglects to articulate how filing a motion demonstrates zeal, but if it does, surely investigating a case and filing a complaint would also evidence zealousness.  As such, even under this extra-statutory test, Mr. Sobala would not be the most adequate plaintiff.

that PSLRA "consistently refers to the lead plaintiff and most adequate plaintiff in the singular, suggesting that the district court should appoint only one lead plaintiff" and that the "appointment of multiple lead plaintiffs would also tend to run counter to the sequential inquiry we outlined for selection of lead plaintiff").  Nor has Mr. Sobala shown that any marginal value he might add would justify the cost and risks of his participation.

Accordingly, the Court should decline to appoint Mr. Sobala as lead (or co-lead) plaintiff.

**D.    Rina Rollhaus' Motion Should Be Denied Because There Is No Need for a Subclass or "Niche Co-Lead Plaintiff"**

Unlike the other movants, Rina Rollhaus does not seek appointment as lead plaintiff on behalf of the entire class.  Rather, Ms. Rollhaus seeks appointment as lead plaintiff "of a separate class of purchasers asserting claims pursuant to the Securities Act of 1933."  *See* Dkt. No. 29 at 1. There are two problems with Ms. Rollhaus' request, either of which forecloses her motion.

First, Ms. Rollhaus filed her complaint at the eleventh hour the same afternoon that lead plaintiff motions were due, "thereby precluding similarly-situated potential movants from identifying themselves to the Court."  *Maliarov*, 2016 WL 1367246, at *4 (declining to consider allegations in complaint filed just before deadline that gave advantage to the movant that filed the complaint because the "specter of gamesmanship on these facts causes the Court to question whether [the movant] will 'fairly and adequately protect the interests of the class'").  Indeed, by doing so, Ms. Rollhaus essentially tried to "shrink the kingdom until [she is] king" (or queen, as it were).  *In re Century Bus. Servs., Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001) (denying movant's attempt to define the contours of the class so that only that movant qualified for appointment).  That is plainly improper.

Second, Ms. Rollhaus' request is predicated on the false assumption that investors with Securities Exchange Act of 1934 claims cannot adequately represent the interests of investors with

- 14 -

1933 Act claims.  They can, and do, which is why courts routinely deny requests like that of Ms. Rollhaus, because it is widely accepted that "'[b]eing a lead plaintiff is not the same thing as being a class representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.'"  *Bodri v. Gopro, Inc*., 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) (denying niche investor's request for appointment as subclass lead plaintiff). "Especially in light of [Ms. Rollhaus'] relatively small financial interest in this litigation, [her] 'speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs . . . , but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds.'"  *Id*.; *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476-477 (S.D.N.Y. 2011) ("Of course, [subclass movant's] argument skips over the facts that the dollar amount and her 'financial interest' are minimal to the point of being *de minimis*.  Her proposed relief would result in a very tiny tail wagging a very large dog.  Finally, [the subclass movant's claims] can be handled in other ways which fully protect the interests of her proposed class.").

Indeed, "it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc*., 366 F.3d 70, 82 (2d Cir. 2004).  Moreover, "any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole." *Id*. at 82 n.13.[12]  Ultimately,

---

[12]  *See also Irving Firemen's Relief and Ret. Fund v. Tesco PLC*, 2015 WL 1345931, at *5 (S.D.N.Y. Mar. 19, 2015) (declining to appoint niche investor as co-lead plaintiff for purchasers of specific security with distinct claim); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig*., 258 F.R.D. 260, 271 (S.D.N.Y. 2009) ("Finger Interests' proposed appointment as niche plaintiff for the Section 14(a) class would add to the expense of the litigation, to the detriment of BofA shareholders, and is not warranted under the circumstances."); *Eshe Fund v. Fifth Third Bancorp*, 2009 WL 10665360, at *1 (S.D. Ohio Mar. 5, 2009) (denying motion to reconsider order declining to appoint

the "'fact that plaintiffs might have different types of securities does not require a separate class or

co-lead plaintiffs because lead plaintiffs need not satisfy all elements of standing with respect to the

entire lawsuit under the PSLRA.'" *Khunt*, 102 F. Supp. 3d at 541; *Tsirekidze*, 2008 WL 942273, at

*5 ("The Bogdanov Group's contention that one of its constituents is uniquely capable of bringing

certain claims is without merit.").

For example, in a similar situation as here, a group of investors asserted that holders of a

different security "should be explicitly represented because their interests might, at some point in the

litigation, diverge from those of the other shareholders." *In re Cendant Corp. Litig*., 182 F.R.D. 144,

147 (D.N.J. 1998).   That court reasonably understood, however, that "[m]ore likely than not, the

putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ

in composition from one another" which simply "does not justify the appointment of potentially

innumerable co-lead plaintiffs to ensure that each individualized interest is represented." *Id.* at 148.

And, the court expressly acknowledged that "[c]ompeting movants may be correct that the resolution

of this case could ultimately favor holders of one type of security over the others." *Id.*  But, "[o]n

the other hand, representation by a disparate group of plaintiffs, each seeking only the protection of

its own interests, could well hamper the force and focus of the litigation.  A balance must be struck."

---

niche lead plaintiff and recognizing that appointing niche plaintiffs will fracture the litigation, making it more difficult for the lead plaintiff to control the litigation, hurting investors in the long run); *Glauser v. EVCI Career Colls. Holding Corp*., 236 F.R.D. 184, 189 (S.D.N.Y. 2006) ("the majority of courts to consider the appointment of small, "niche" investors as co-Lead Plaintiff have rejected it" because "rather than better serving the interests of individual class members, the appointment of a co-Lead Plaintiff would only serve to fracture the leadership and drive up attorney[']s fees"); *In re Enron Corp., Sec. Litig*., 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred stockholders, bondholders, and other securities holders that separate classes and separate lead counsel were required for each type of security noting that for purposes of efficiency and fairness to all litigants, "the litigation should proceed as a unified class with a strong Lead Plaintiff, at least until the time for class certification").

- 16 -

*Id.* That court sensibly recognized that "notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general." *Id.*

Absent a showing sufficient to rebut the presumption in favor of appointing the most adequate plaintiff as lead plaintiff (here, Mr. Kebler), Ms. Rollhaus' self-interest does not militate in favor of multiple lead plaintiffs. *See Schueneman v. Arena Pharm., Inc.*, 2011 U.S. Dist. LEXIS 87373, at *17-*18 (S.D. Cal. Aug. 8, 2011) (denying request as premature at lead plaintiff stage); *In re XM Satellite Radio Holdings Sec. Litig*, 237 F.R.D. 13, 20 (D.D.C. 2006) (same). Ms. Rollhaus' motion should be denied.

### E.  The Other Movants Are Not Eligible for the PSLRA's Presumption

Each of the other movants claim smaller losses than Mr. Kebler's loss:

| Movant: | Claimed Loss: | Net Shares Purchased: |
|---|---|---|
| **Chris Kebler** | **$133,000** | **2,000** |
| Subhash Saha | $61,600 | 1,000 |
| David Kloopfenstein | $20,134 | 800 |

Consequently, the Court cannot consider their motions unless the presumption in favor of appointing Mr. Kebler as lead plaintiff is successfully rebutted. *Cavanaugh*, 306 F.3d at 732 (court considers other motions "if and only if" the presumptive lead plaintiff is "found inadequate or atypical"). Because Mr. Kebler is "willing to serve and satisfies the requirements of Rule 23," the other motions should be denied. *Id.* at 730.

### III.  CONCLUSION

Mr. Kebler is the only applicant before the Court that satisfies the PSLRA's criteria for appointment as lead plaintiff. The other applicants either do not satisfy the Rule 23 requirements or lack a sufficient financial interest. Consequently, their motions should be denied and the requests of

1322938_1

Mr. Kebler, that he be appointed as Lead Plaintiff and his counsel approved as Lead Counsel, should

be granted.

DATED:  October 27, 2017                      Respectfully submitted,

                                             LAW OFFICE OF ALAN L. KOVACS
                                             ALAN L. KOVACS (BBO #278240)


                                                  s/ Alan L. Kovacs
                                             ALAN L. KOVACS (BBO #278240)

                                             257 Dedham Street
                                             Newton, MA  02461
                                             Telephone:  617/964-1177
                                             617/332-1223 (fax)

                                             Local Counsel

                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                             SAMUEL H. RUDMAN
                                             58 South Service Road, Suite 200
                                             Melville, NY  11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                             DANIELLE S. MYERS
                                             655 West Broadway, Suite 1900
                                             San Diego, CA  92101
                                             Telephone:  619/231-1058
                                             619/231-7423 (fax)

                                             JOHNSON FISTEL, LLP
                                             FRANK J. JOHNSON
                                             600 West Broadway, Suite 1540
                                             San Diego, CA  92101
                                             Telephone:  619/230-0063
                                             619/255-1856 (fax)

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA  30064
Telephone:  770/200-3104
770/200-3101 (fax)

[Proposed] Lead Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 27, 2017.

s/ ALAN L. KOVACS
ALAN L. KOVACS

LAW OFFICE OF ALAN L. KOVACS
257 Dedham Street
Newton, MA  02461
Telephone:  617/964-1177
617/332-1223 (fax)

E-mail:        akovacs@kovacslaw.com

- 1 -